1  John R. Parker, Jr,
California Bar No. 257761
2  **ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
3  Sacramento, California 95821
Tel: (916) 616-2936
4  jrparker@almeidalawgroup.com

5  *[Additional Counsel Listed Below]*

6  ***Attorneys for Plaintiff & the Proposed Class***

7  **UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**
8

9  BRIGETTE HOOD, *individually and on
behalf of herself and all others similarly
10  situated,*

11      Plaintiff,

12    v.

13  HANDI-FOIL CORP., HANDI-FOIL
ALUMINUM CORP., and JIFFY-FOIL
14  CORP,

15

16      Defendant.

17

Case No.

**CLASS ACTION:**

1.  **Violation of CLRA**
2.  **Violation of UCL**
3.  **Violation of FAL**
4.  **Breach of Express and
    Implied Warranties**
5.  **Unjust Enrichment**

**JURY TRIAL DEMANDED**

18  **CLASS ACTION COMPLAINT**

19      Plaintiff Brigette Hood ("Ms. Hood"), a California citizen, on behalf of herself and all

20  others similarly situated, alleges violations of California's Consumer Legal Remedies Act

21  ("CLRA"), Cal. Civ. Code § 1750, *et seq*.; California's Unfair Competition Law ("UCL"), Cal.

22  Bus. & Prof Code § 17200, *et seq*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof

23  Code § 17500, *et seq*.; and unjust enrichment against Defendants Handi-Foil Corp., Handi-Foil

24  Aluminum Corp. and Jiffy-Foil Corp. ("Handi-Foil" or "Defendants"). This court has jurisdiction

25  pursuant to 28 U.S.C. § 1332. In support of these claims, Ms. Hood states as follows:

26  **NATURE OF THE ACTION**

27      1.      Handi-Foil, one of the largest manufacturers of aluminum consumer products in the

28  United States, routinely misleads consumers and violates the law by inaccurately labeling and

1

advertising its products as "Made in the USA" and "Made in USA" when the products are not completely processed domestically or made of materials sourced in the United States of America.

2.     Given Defendants' "Made in the USA" claims and the prominently featured American flags on their labels, consumers expect that all of Defendants' products and their components originate in the USA.

3.     But that is not the case—the products have significant foreign input in the form of bauxite, the primary ingredient in aluminum. Almost no bauxite is mined in the USA. The overwhelming majority of the material is mined and significantly processed internationally, then imported from overseas and used to create the products.

4.     Because the main component of Defendants' products is foreign-sourced, consumers are essentially buying foreign composite products. Moreover, because bauxite is processed overseas before being shipped to the USA, Defendants' products are not entirely "Made in the USA." These false representations have been made for the statutory period up to and including at least August 2022.

5.     Defendants make deceptive claims and misrepresentations on their product labels, falsely implying that the products are American, made in the United States, of American components. Consumers rely on these representations, paying premium prices because they believe Defendants' products are made in the United States from American materials and are therefore more valuable.

6.     Ms. Hood brings this action on behalf of herself, and others similarly situated to rectify these unlawful practices and compensate consumers for the losses incurred by relying on the inaccurate labels.

## THE PARTIES

7.     Ms. Brigette Hood is a natural person and citizen of California who resides in the Northern District of California. Ms. Hood purchased products manufactured and distributed by Defendants during the four (4) years prior to the filing of this Complaint ("the Class Period") for personal, family or household purposes. Ms. Hood was injured in fact and lost money as a result of Defendants' unlawful labeling.

CLASS ACTION COMPLAINT

8.      Defendant Handi-Foil Corp. is a corporation incorporated under the laws of Illinois with its principal place of business in Illinois. Upon information and belief, Handi-Foil Corp.'s corporate address is 135 East Hintz Road, Wheeling, IL 60090.

9.      Defendant Handi-Foil Aluminum Corp. is a corporation incorporated under the laws of Illinois with its principal place of business in Illinois. Upon information and belief, Handi-Foil Aluminum Corp.'s corporate address is 135 East Hintz Road, Wheeling, IL 60090.

10.     Defendant Jiffy-Foil Corp. is a corporation incorporated under the laws of Illinois with its principal place of business in Illinois. Upon information and belief, Jiffy-Foil Corp.'s corporate address is 135 East Hintz Road, Wheeling, IL 60090.

11.     Upon information and belief, Defendants are affiliated companies. Defendants have the same corporate address and counsel for Defendants has represented that they are affiliated.

## JURISDICTION AND VENUE

12.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a putative class action wherein, upon information and belief, the aggregate amount in controversy exceeds $5,000,000; there are over 100 class members; and minimal diversity requirements are met. *See* 28 U.S.C. § 1332(d)(2). Ms. Hood is a California citizen and no defendant is a citizen of California.

13.     Venue is proper in the District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Hood's claims occurred in this judicial district. Ms. Hood purchased the products at issue and was misled by Defendants' inaccurate labelling in this District.

## FACTUAL ALLEGATIONS

**A.  FTC's Guidance on "Made in USA" Claims.**

14.     "Made in the USA" and other similar advertising claims are terms of art with legal definitions that guide their proper use. *See*, e.g., FTC Made in USA Labeling Rule, 16 C.F.R. § 323.1(a) (2021) ("The term *Made in the United States* means any unqualified representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin. . . .").

15.     For decades, the FTC's *Enforcement Policy Statement on U.S. Origin Claims* has

CLASS ACTION COMPLAINT

provided that manufacturers of products made with foreign or recycled materials cannot claim that the products are "Made in the USA" unless the manufacturers can show that the materials used to make the products originate domestically. *See* FTC "Made in USA" and Other U.S. Origin Claims, 62 Fed. Reg. 63756 (Dec. 2, 1997).

16.     Codifying its existing guidance into a "restatement rule" which became effective on August 13, 2021, the FTC explained that

> it is an unfair or deceptive act or practice . . . to label any product as Made in the United States unless [1.] the final assembly or processing of the product occurs in the United States, [2.] all significant processing that goes into the product occurs in the United States, and [3.] all or virtually all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2.

17.     Even when a manufacturer buys product materials from a U.S. supplier, if those materials themselves are foreign-sourced or made up of foreign-sourced ingredients, the manufacturer may not simply label and advertise its final product as "Made in the USA." *See* "Made in USA" and Other U.S. Origin Claims, 62 Fed. Reg. at 63769.

18.     The FTC bases its position on polls of consumers that show that most consumers regard a "Made in the USA" label as meaning that the product—including the materials used in its manufacture—is entirely or nearly entirely made in the USA. *See* FTC Made in USA Labeling Rule, 86 Fed. Reg. 37022, 37026 (July 14, 2021).

19.     Manufacturers may use qualified "Made in the USA" claims to accurately label products that are manufactured domestically using foreign materials. *See* "Made in USA" and Other U.S. Origin Claims, 62 Fed. Reg. at 63769–70. An example of a compliant qualified claim is a label that states "Made in the USA with globally sourced materials." *Id.*

**B. Significant Components of Defendants' Aluminum Products Are Not Domestically Sourced.**

20.     Defendants represent that their respective products are "Made in the USA." The

representations are front and center on the products' labels, juxtaposed with a graphic of the American flag.

21. Defendants make similar representations on their websites.

22. All significant processing that goes into Defendants' products does not occur in the United States, and all or virtually all components of Defendants' products are not sourced in the United States, making Defendants' labelling inaccurate, misleading, and unlawful.

23. The aluminum used to make Defendants' aluminum consumer products is substantially made from the mined mineral bauxite. There is no way to manufacture aluminum for consumer foil, bakeware, or grilling pans and liners except with bauxite.

24. The United States imports almost all of the bauxite it uses. Domestic bauxite mines contribute less than 5% of the bauxite the United States consumes, and none of the domestically mined bauxite is used to make aluminum for aluminum consumer products. U.S. Geological Survey, E. Lee Bray, *Bauxite and Alumina, in 2018 Minerals Yearbook*, at 10.1 (Feb. 2022), https://pubs.usgs.gov/myb/vol1/2018/myb1-2018-bauxi.pdf.

25. Based on U.S. Geological Survey data, and upon information and belief, bauxite used in manufacturing Defendants' aluminum consumer products is imported from abroad. The international sources of bauxite for aluminum production are readily known based on the U.S. Geological Survey's annual and quarterly reports. A handful of countries produce most of the world's supply of bauxite. *See Id.*

26. Upon information and belief, essential, significant, and expensive processing of bauxite happens overseas.

27. Bauxite comes out of the ground as a slab of rock that can be transported to the U.S. for processing, but that is not what international mines and domestic importers choose to do.

28. Rather, bauxite is extracted from the ground in complex mining operations and then significantly processed before it is shipped to the United States.

29. Companies prefer to buy bauxite that has been processed internationally because it is cheaper to ship processed bauxite to the United States, and processed bauxite that has been finely ground has a maximized surface area that makes the domestic refining processes more efficient.

CLASS ACTION COMPLAINT

30.     To that end, international mines significantly process bauxite to ensure that it is consistent in surface area, quality, and moisture level.

31.     Bauxite is crushed initially, then cleaned to remove excess, less valuable material, then dried. During this process the bauxite is screened multiple times, conveyed multiple times, and crushed again before being shipped to the United States.

32.     Some bauxite is put through a grinding process and transformed into a substance that is finer than sand to be primed for further chemical processing the U.S.

33.     Even more extensive refinement of bauxite may occur overseas depending on importers' contracts with mining companies.

34.     Foreign bauxite makes up a significant portion of Defendants' products by cost of production of the product and/or final composition of the product.

35.     The high level of foreign input into Defendants' products conflict with the expectations of an American consumer when they purchase a product bearing a "Made in the USA" label.

36.     Defendants cannot label their aluminum products with an unqualified "Made in the USA" claim given the products' significant foreign bauxite content.

37.     Defendants' misleading representations are directed at consumers *See*king to purchase products with the American pedigree. The prominently displayed image of the American flag combined with the "Made in the USA" reference on the label means to the reasonable consumers that the product is an American product, of better American quality, of the United States, made in the United States, from United States sourced materials, or all of the foregoing.

38.     Manufacturers, like Defendants, are aware of the connotations of these labels. They promote their products as superior, expressly or impliedly, because they originate from the United States. The perception that Defendants' American-made products are more valuable induces consumers to purchase Defendants' products at a premium price.

39.     American consumers, like Ms. Hood, are more likely to buy products that are marketed as "Made in the USA." Consumers place higher value on U.S.-made products because they believe such products provide American jobs and support the U.S. economy. Consumers also

CLASS ACTION COMPLAINT

believe that "Made in the USA" labelling implies higher grade components or ingredients, so they are willing to spend more money on products that are marketed as American-made.

40.     Defendants intentionally use the "Made in the USA" label because they believe it works to influence consumers to purchase their products. If the "Made in the USA" claim on Defendants' labels did not give their product a competitive advantage in the market, Defendants would not use the labels.

41.     Defendants capitalized on misleading and deceiving purchasers of their products to get an unfair business advantage when competing with their marketplace peers.

42.     Consumers like Ms. Hood are deceived by Defendants' misrepresentations and are harmed by overpaying for a material feature or benefit advertised on the product labels that they do not receive.

**C. Ms. Hood's Facts.**

43.     Ms. Hood is a consumer who regularly purchases aluminum products for her personal, family, or household purposes.

44.     In or around August of 2022, Ms. Hood, relying on the "Made in the USA" labels and American flag graphics on the packages, purchased Handi-Foil 8" square and 13" x 9" cake pans and a Jiffy-Foil rack roaster because she believed the products were actually made in the United States out of materials sourced in the United States.



45.     The fact that the products were represented as being "Made in the USA" was an important consideration for Ms. Hood in purchasing Defendants' products.

7

46.     At the time Ms. Hood purchased the products, she did not know, and had no reason to know, that Defendants' claims were misleading and unlawful as set forth herein. Ms. Hood believed the products were made in the USA, as they were labelled, which she understood to mean that not only were the raw materials for the product converted and transformed in the United States but also that the raw materials were sourced domestically.

47.     Ms. Hood paid more for the products than she would have had she known that the materials used to make them were not sourced from the United States, but from overseas, and that significant processing of the products occurred overseas.

48.     Defendants' labeling, advertising and marketing as alleged herein is false and misleading and was designed to increase sales of the products at issue. Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

49.     As a result of Defendants' unlawful and misleading claims, Ms. Hood and thousands of similarly situated consumers purchased the products at issue.

50.     Ms. Hood on her own behalf, and on behalf of the putative Class members, notified Defendants of the violations and claims alleged herein on or about September 22, 2022. Despite giving Defendants more than 30 days from the date of the notification letters to provide appropriate relief for the violations and claims alleged herein, Defendants have failed to provide any such relief.

## CLASS ACTION ALLEGATIONS

51.     Ms. Hood brings this action on behalf of the following class of persons (the "Class"), subject to modification after discovery and case development:

> All persons in the State of California who, within four years prior to the filing of this Complaint, purchased Defendants' aluminum products which were falsely represented as being "Made in the USA."

52.     Excluded from the class are Defendants, any entities in which Defendants have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

53.     Ms. Hood proposes that she serve as class representative.

54.     Ms. Hood and the Class have all been harmed by the actions of Defendant.

55.     Numerosity is satisfied. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Ms. Hood believes the number of Class members are in the thousands of persons, if not more. Individual joinder of these persons is impracticable.

56.     There are questions of law and fact common to Ms. Hood and to the Class that predominate over any questions affecting only individual Class members, including, but not limited to:

    a.  Whether Defendants engaged in unfair or deceptive business practices by advertising and selling their products;

    b.  Whether Defendant made unlawful and misleading claims regarding the origin of manufacture of their products;

    c.  Whether the products were falsely advertised and misbranded as to their geographic origin of manufacture as a matter of law;

    d.  Whether Defendants violated the CLRA, UCL, FAL or were unjustly enriched;

    e.  Whether Ms. Hood and the Class were damaged by Defendants' conduct;

    f.  Whether Ms. Hood and the Class are entitled to actual and/or statutory damages as a result of Defendants' actions;

    g.  Whether Ms. Hood and the Class are entitled to restitution;

    h.  Whether Ms. Hood and the Class are entitled to attorney's fees and costs.

    i.  Proof of a common set of facts will establish the right of each Class member to recover.

57.     Ms. Hood's claims are typical of the claims of the Class members because Ms. Hood, like the Class members, purchased Defendants' misleading "Made in the USA" labelled products in reliance on that assertion. Defendants' unlawful, unfair and/or fraudulent actions concern the same

business practices described herein irrespective of where they occurred or were experienced. Ms. Hood and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law. Ms. Hood and the members of the Class sustained the same types of damages and losses. Ms. Hood's claims arise from the same course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

58.     Ms. Hood is an adequate class representative because her interests do not conflict with the interests of the Class members, and she will adequately and fairly protect the interests of the Class members. Ms. Hood intends to prosecute this action vigorously and has taken actions before filing this complaint by hiring skilled and experienced counsel and by making a pre-suit demand on behalf of class members to protect the interests of the Class. There is no conflict between Ms. Hood and the proposed class.

59.     A class action is the superior method for fair and efficient adjudication of Ms. Hood's and the Class members' claims. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. In addition, it is likely that most class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual class members, even, if possible, would create a risk of inconsistent or varying adjudications regarding the individual class members.

60.     There are no difficulties likely to be encountered by the court in management of this putative class action.

### CAUSES OF ACTION

### COUNT I
### Violation of the California Consumers Legal Remedies Act
### Cal. Civ. Code §§ 1750, et seq.

61.     Ms. Hood incorporates the preceding paragraphs as if alleged herein.

62.     California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

63.     The products are "goods," as defined in California Civil Code section 1761(a).

64.     Defendants are "person[s]" as defined in California Civil Code section 1761(c).

65.     Ms. Hood and members of the Class are "consumers," as defined in California Civil Code section 1761(d).

66.     Purchase of the products by Ms. Hood and members of the Class are "transactions," as defined in California Civil Code § 1761(e).

67.     Defendants violate section 1770(a)(4), which prohibits the use of "deceptive representations or designations of geographic origin in connection with goods or services," by representing that their products are "Made in the USA" when the materials from which they are manufactured are not sourced in the USA. Defendants cannot label their aluminum products with an unqualified "Made in the USA" claim given the products' significant foreign bauxite content.

68.     Defendants also violate section 1770(a)(5) by representing that the products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that Defendants use "Made in the USA" on the products' labels but the products are not from, of, or by the United States; instead they are from foreign sources.

69.     Similarly, Defendants violate section 1770(a)(7) by representing that the products "are of a particular standard, quality, or grade . . . if they are of another" by advertising they are from, by, of or related to America. Defendants' products do not actually have those qualities, and consequently they are misrepresented. Similarly, Defendants' assertions that their products are "Made in the USA" is an expressly stated feature that consumers often will pay more for, and the products did not actually have that feature.

70.     Lastly, Defendants violate section 1770(a)(9) by advertising the products "with intent not to sell them as advertised" due to deceptive statements and claims that the products are "Made in the USA" of domestic components when they were not.

71.     Ms. Hood and the members of the Class reasonably and justifiably relied on Defendants' misrepresentations in purchasing the products. Had the products been honestly advertised and labeled, Ms. Hood and members of the Class would not have purchased them and/or would have paid less for the products.

72.     As a proximate and direct result of Defendants' conduct, Ms. Hood and members of

the Class have been injured and suffered damages by purchasing one or more of the products that feature false and/or misleading labeling. Likewise, Defendants have unreasonably profited from its conduct.

73.     Given that Defendants' conduct violated section 1770(a)(5), Ms. Hoods and members of the Class are entitled to and seek injunctive relief to put an end to Defendants' violations of the CLRA.

74.     Moreover, Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers to increase the sale of the products.

75.     Pursuant to California Civil Code § 1782(a), Ms. Hood on her own behalf, and on behalf of members of the Class, notified Defendants of the alleged violations of the CLRA in a letter sent on or about September 22, 2020. Despite giving Defendants more than 30 days from the date of the notification letter to provide appropriate relief for violations of the CLRA, Defendants have failed to provide any such relief. As such, Ms. Hood also *Seek*s compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as provided in California Civil Code section 1780 and in the Prayer for Relief.

76.     Ms. Hood also requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to section 1780(a)(2).

**COUNT II**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500–17606**

77.     Ms. Hood incorporates the preceding paragraphs as if alleged herein.

78.     California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq., protects consumers by holding companies liable for unfair competition and unlawful business practices.

79.     The UCL provides a private right of action to any person who has suffered injury in fact and, as a result of unfair business practices, has lost money or property. Cal. Bus. & Prof. Code

§ 17204.

80.    The UCL broadly applies to any corporation that engages in unfair competition. *Id.* §§ 17200, 17201.

81.    The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. *Id.* § 17200.

82.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation. The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999).

83.    Because the UCL's definition of unfair competition includes any unlawful business act or practice, the statute "borrows violations of other laws and treats them as unlawful practices" that are independently actionable under the UCL. *Id.* at 539–40. Accordingly, violations of other statutes as alleged herein are all actionable under the UCL.

84.    Defendants' conduct as alleged herein was unlawful within the meaning of the UCL, because Defendants have violated sections 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA, as well as FTC regulations, including without limitation 16 C.F.R. §§ 323.1(a), 323.2; and 62 Fed. Reg. 63756 (Dec. 2, 1997), 62 Fed. Reg. at 63769–70, and as pleaded above.

85.    The unfair prong of the UCL prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

86.    Defendants' conduct, as alleged herein, was also fraudulent within the meaning of the UCL. Defendant represented that its products were "Made in the USA" on the products' labels but the products are not from, of, or by the United States; instead they are from foreign sources.

87.    Defendants accordingly made deceptive misrepresentations and omitted known material facts in connection with the sale of the products at issue in this matter.

88.    Had Plaintiffs and Nationwide Class Members known Defendants were not in fact sourced from the United States, they would not have purchased Defendants' products and were in fact injured, having been induced to purchase products that would not have otherwise purchased

13

absent Defendants' misrepresentations.

89.     Defendants' unlawful actions in violation of the UCL have caused and are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

90.     Plaintiff and Class Members were entitled to assume, and did assume, that Defendants' representations that Defendants' products were "Made in the USA."

91.     Plaintiffs and Nationwide Class Members reasonably relied upon Defendants' representations that Defendants' products were "Made in the USA."

92.     Defendant was in sole possession of and had a duty to disclose the material information that the products at issue were not in fact Made in the USA.

93.     The harm caused by the Defendants' conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendants' legitimate business interests other than Defendants' conduct described herein.

94.     Defendants' acts, omissions and conduct also violate the unfair prong of the UCL because those acts, omissions and conduct offended public policy (including the aforementioned California statutes and Federal regulation), and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class Members.

95.     As a direct result of Plaintiff's and Class Members' reliance on Defendants' representations that Defendants' products were "Made in the USA" Plaintiff and Class Members were injured.

96.     As a direct result of Defendants' violations of the UCL, Plaintiffs and Nationwide Class Members have suffered injury in fact and lost money or property.

97.     Defendants' conduct constitutes unfair and/or fraudulent business acts and practices because Defendants made false representations to Ms. Hood and members of the Class that were likely to deceive Ms. Hood and members of the Class into purchasing Defendants' products. Defendants misrepresented and made false statements that the products were "Made in the USA," when they were not. Defendants cannot label their aluminum products with an unqualified "Made in the USA" claim given the products' significant foreign bauxite content.

14

CLASS ACTION COMPLAINT

98.   Defendants are aware that the claims or omissions they make about the products are and continue to be false and misleading.

99.   Defendants had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in their practices related to the labeling of their products.

100.   There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests other than the conduct described herein.

101.   Moreover, Ms. Hood and members of the Class could not have reasonably avoided such injury, given that Defendants failed to disclose the products' true characteristics at any point. Ms. Hood and members of the Class purchased the products in reliance on the representations made by Defendants, as alleged herein.

102.   As a result of the above conduct, Ms. Hood has suffered economic injury, and Defendants have been unjustly enriched at the expense of Ms. Hood and members of the Class through: the monies paid to Defendants for the products that lacked the characteristics advertised, interest lost on those monies, and their unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers.

103.   As a result of the business acts and practices described above, Ms. Hood and members of the Class, pursuant to section 17203 of the UCL, are entitled to an Order enjoining such future wrongful conduct on the part of Defendants and such other Orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the products as a result of the wrongful conduct of Defendants.

104.   As a direct result of its unfair practices, Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and Nationwide Class Members pursuant to §§ 17203 and 17204 of the California Business & Professions Code, disgorgement of all profits accruing to Defendant because of its unlawful business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5) and injunctive or other equitable relief.

105.   Pursuant to California Civil Code section 3287(a), Ms. Hood and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and

capable of calculation, and Ms. Hood and the Class are entitled to interest in an amount according to proof.

**COUNT III**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500–17606**

106.    Ms. Hood incorporates the preceding paragraphs as if alleged herein.

107.    California's False Advertising Law (FAL), Cal. Bus. & Prof. Code §§ 17500 et seq., prohibits unfair, deceptive, untrue or misleading advertising.

108.    Defendants violated the FAL when they represented through false and misleading advertising and through other express representations that the products were "Made in the USA" when they were not. The aluminum products, given their significant foreign bauxite content, cannot be labelled with an unqualified "Made in the USA" claim. Defendants misled consumers to believe that their products possessed quality, characteristics, and value that they did not actually have.

109.    This conduct particularly violates California Business and Professional Code section 17533.7(a), which makes it unlawful to sell merchandise labelled with "Made in USA," "Made in America," "USA," or other similar expressions "if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

110.    All of the articles, units, or parts of Defendants' products that are obtained from outside the United States constitute more than ten percent of the final wholesale value of the manufactured products.

111.    Defendants' deceptive practices were specifically designed to induce Ms. Hood and Class members to purchase the products. Defendants engaged in marketing efforts to reach Ms. Hood and Class members and were successful in persuading Ms. Hood and Class members to purchase the falsely advertised products. Ms. Hood and Class members purchased the products in reliance on Defendants' false and misleading statements.

112.    Ms. Hood and Class members would not have purchased Defendants' products had it not been for Defendants' misrepresentations of material facts. Ms. Hood and Class members were denied the benefit of the bargain when they decided to purchase Defendants' products over

16

competitor products. Had Ms. Hood and Class members been aware of the false and misleading advertising tactics, they would have paid less than what they paid for the products, or they would not have purchased them at all.

113. The above acts of Defendants, in disseminating misleading and deceptive representations and statements throughout California to consumers, including Ms. Hood and Class members, were and are likely to deceive reasonable consumers in violation of the FAL.

114. In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of the FAL.

115. Defendants continue to engage in unlawful, unfair and deceptive practices in violation of the FAL to induce consumers to purchase their products.

116. As a direct and proximate result of Defendants' unlawful conduct in violation of the FAL, Ms. Hood and Class members, pursuant to section 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendants and requiring Defendants to disclose the true nature of their misrepresentations.

117. Ms. Hood and Class members also request an Order requiring Defendants to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

## COUNT IV
### Breach of California Express and Implied Warranties
### Cal. Com. Code §§ 2313, 2314(2)(f)

118. Ms. Hood incorporates the preceding paragraphs as if alleged herein.

119. Defendants' products were manufactured, identified, and sold by Defendants and expressly and impliedly warranted to Ms. Hood and Class members as "Made in the USA," which Ms. Hood and Class members reasonably understood to mean that not only were the raw materials for the products converted and transformed into the final products in the United States, but that the raw materials for the products were also sourced within the United States.

120. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

121. Defendants made promises and affirmations of fact through the sale of their products

CLASS ACTION COMPLAINT

constituting warranties when they advertised and sold their aluminum products with the words "Made in the USA" on the labels. Ms. Hood and Class members relied on these promises and affirmations and they became part of the basis of the bargain between Ms. Hood and Class members and Defendants.

122.    Defendants, through their marketing and product labels, created express and implied warranties that the products were actually "Made in the USA."

123.    Defendants are merchants with respect to the sale of the products. Therefore, a warranty of merchantability is implied in every contract for sale of the products to Ms. Hood and Class members.

124.    Despite Defendants' express and implied warranties about the origin of the products, the quality and characteristics of the products were not as Defendants represented them to be. The aluminum products, given their significant foreign bauxite content, cannot be labelled with an unqualified "Made in the USA" claim. The products did not conform to its affirmations of fact and promises due to Defendants' deceptive and misleading actions.

125.    Defendants breached their express warranties and the implied warranty of merchantability because their products did not conform to the promises or affirmations of fact made on the labels. *See* Cal. Com. Code §§ 2313, 2314(2)(f).

126.    Defendants breached their express and implied warranties about the origin of their aluminum products. Defendants knew the product attributes that potential customers like Ms. Hood were *See*king and developed its marketing and labeling to directly meet those needs and desires. *See Id.*

127.    As a direct and proximate result of Defendants' breach of warranties, Ms. Hood and Class members were harmed in the amount of the purchase price they paid for the products. Further, Ms. Hood and Class members have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

CLASS ACTION COMPLAINT

### COUNT V
### Unjust Enrichment

128.    Ms. Hood incorporates the preceding paragraphs as if alleged herein.

129.    In the event Ms. Hood and Class members lack adequate remedies at law for the past, present, and future injuries Defendants have inflicted, Ms. Hood *Seeks* equitable relief on behalf of herself and all others similarly situated.

130.    As alleged herein, Defendants have intentionally and recklessly made misleading representations to Ms. Hood and Class members to induce them to purchase their products. Ms. Hood and Class members have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Ms. Hood and Class members therefore were induced by Defendants' misleading and deceptive representations about the products and paid more money to Defendants for the products than they otherwise would and/or should have paid.

131.    Ms. Hood and Class members have conferred a benefit upon Defendants as they have retained monies paid to them by Ms. Hood and Class members.

132.    The monies received were obtained under circumstances that were at the expense of Ms. Hood and Class members because Ms. Hood and Class members did not receive the full value of the benefit conferred upon Defendants.

133.    Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Ms. Hood and Class members back for the difference of the full value of the benefits compared to the value actually received.

134.    As a direct and proximate result of Defendants' unjust enrichment, Ms. Hood and Class members are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Ms. Hood, on behalf of herself and others similarly situated, respectfully requests that the Court:

    A.  Certify the proposed Class;

B.  Appoint Ms. Hood as class representative and Ms. Hood's counsel as class counsel;

C.  Temporarily and permanently enjoin Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

D.  Award damages, including compensatory and exemplary damages, to Ms. Hood and the Class in an amount to be determined at trial;

E.  Award statutory damages and/or penalties to Ms. Hood and the Class;

F.  Award punitive damages;

G.  Award Ms. Hood and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

H.  Award pre-and post-judgment interest to the extent provided by law; and

I.  Award such further relief as the Court deems just and proper.

Dated: April 22, 2024                    Respectfully Submitted,

**ALMEIDA LAW GROUP LLC**

/s/ John R. Parker, Jr.
John R. Parker, Jr. (SBN 257761)

**PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP**

Brandon M. Wise*
Domenica M. Russo*
One US Bank Plaza, Suite 1950
St. Louis, MO 63104
bwise@peifferwolf.com
drusso@peifferwolf.com

*pro hac vice forthcoming

*Attorneys for Plaintiff & the Proposed Class*

CLASS ACTION COMPLAINT

**DECLARATION OF JOHN R. PARKER, JR.**
**PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)**

I, John R. Parker, Jr., declare as follows:

1.      I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act.  I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.  I am one of the attorneys representing Plaintiff and the putative class in this matter.

2.      Defendants HANDI-FOIL CORP., HANDI-FOIL ALUMINUM CORP., and JIFFY-FOIL CORP are doing business in the Northern District of California.

3.      Plaintiff Ms. Brigette Hood resides in the Northern District of California.  Plaintiff purchased Defendants' products in this District and viewed Defendants' labels in this District.  Her claims are typical of those of the Class she seeks to represent in this action.

3.      This action was commenced in the United States District Court for the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on April 22, 2024 in Sacramento, California.

*/s/ John R. Parker, Jr.*
John R. Parker, Jr.

CLASS ACTION COMPLAINT